*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
June 10, 2021

v

No. 346744
Muskegon Circuit Court
LC No. 18-001518-FH

STEVEN RAY MILLER,

        Defendant-Appellant.

Before: STEPHENS, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant, Steven Ray Miller, appeals as of right his convictions by a jury of three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(B) (defendant 17 years old or older and victim less than 13 years old). The trial court sentenced defendant to concurrent terms of 7 to 15 years' imprisonment on each of his CSC-II convictions.

Following oral argument in this matter, this Court remanded the case to the trial court for a *Ginther*[1] hearing. After the hearing, the trial court denied defendant relief in a written opinion and order. The parties filed supplemental briefs with this Court. After review of the entire record and all written and oral submissions, we affirm.

## I. FACTUAL BACKGROUND

The victim's immediate family temporarily lived with her grandmother and defendant, her step-grandfather. After the victim's family moved out of defendant's home, the victim frequently visited and stayed the night at defendant's home with her mother and brother or alone. The victim, seven years old at the time of trial, testified that defendant sexually abused her at least three times while alone with defendant in the basement of her grandparents' home. She stated that she and defendant took off their pants and underwear and defendant touched her "privacy" with his

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"privacy." He touched her front private area with his "entire thing." The victim testified that defendant told her that it was a secret.

The victim reported the abuse to her mother who took her to the emergency room where the victim underwent an interview and a physical exam by a registered nurse who had training and experience as a sexual abuse nurse examiner. The nurse called the police, and the police spoke to the victim's mother and opened an investigation. The prosecution later charged defendant. Defendant testified in his own defense at trial that he never sexually abused the victim. He explained that because of his job he had been absent from the home for extended periods. On cross-examination, however, he admitted that he had been present during an approximately 17-month period. He also admitted that the victim was generally truthful and that he could point to no reason why she would lie about being sexually abused.

## II. ANALYSIS

## A. PROSECUTION EXPERT WITNESS

Defendant first argues that the trial court erred by allowing the prosecution to elicit testimony from the prosecution's expert witness, Dianne Amstutz, regarding how often children lie about sexual abuse and that those that do usually recant. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). In this case, defendant objected to the admission of Amstutz's testimony regarding her forensic interview of the victim. During Amstutz's trial testimony, however, defendant did not object to Amstutz's testimony on the ground that he raises on appeal. Therefore, defendant did not preserve this issue for appeal.

We review unpreserved claims under the plain error standard. *People v Jackson*, 292 Mich App 583, 592; 808 NW 541 (2011). To avoid forfeiture of the claimed error, a defendant must establish that: 1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). Even if the "defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted, alteration in original).

"The trial court has an obligation under MRE 702 to ensure that any expert testimony admitted at trial is reliable." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007) (quotation marks and citation omitted). Under MRE 702, when admitting expert testimony, trial courts must determine whether "the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). In *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), our Supreme Court limited expert witness testimony in child

sexual abuse cases: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." It clarified that an expert witness may testify: (1) "in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim," and (2) regarding "the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353. Our Supreme Court explained that expert testimony regarding the percentage rate at which children lie about sexual abuse improperly vouches for the credibility of the child victim. *Id*. at 375-376.

In *People v Thorpe*, 504 Mich 230, 254; 934 NW2d 693 (2019), our Supreme Court recently explained that experts in child sexual abuse cases may be questioned whether children lie or manipulate because such questions elicit testimony regarding "discrete, straightforward, and uncontroversial questions of fact." Our Supreme Court, however, reiterated the principle expressed in *Peterson* that the prosecution may not elicit expert testimony regarding the percentage rate of children who lie about child sexual abuse because such testimony improperly vouches for the veracity of the victim. *Id*. at 259-260.

In this case, before trial, sustaining objections interposed by defense counsel, the trial court ruled inadmissible the forensic interview of the victim conducted by Amstutz. During the trial, it considered the prosecution's interest in admission of the forensic interview but again ruled it inadmissible. The trial court qualified Amstutz as an expert on the basis of her education and extensive experience in performing forensic interviews of sexual abuse claimants and permitted her to testify to the jury regarding child sexual abuse, the dynamics of sexual abuse in children, sex offender methodology, and the forensic interviewing process and protocols. Amstutz testified about the protocols for forensic interviewing of victims and generally about child sexual abuse, the dynamics of sexual abuse in children, victim's delayed disclosure, and how sex offenders groom victims. During Amstutz's testimony, the prosecution asked her if children ever lie about being abused. Amstutz affirmed that some children lie about being abused and explained that she personally saw that more often with older children angry about something. The prosecution next asked how commonly children lied, to which Amstutz responded without objection:

> It's pretty rare that it happens. Professional literature tells us that it's pretty rare, but it does happen. And usually before it gets too far, kids will recant because, you know, they get subjected to medical exams, court processes, talking to law enforcement, prosecutors, all the upset in the family, so there's just so much to go through with that that it usually doesn't get very far, but it happens.

Under the principles articulated in *Peterson* and *Thorpe*, by testifying regarding the rarity of children who lie about sexual abuse and that those that do usually recant, Amstutz improperly vouched for the credibility of the victim. Therefore, an obvious error occurred by the admission of such testimony. Because defendant has established the first two plain error requirements, we must consider whether he has proved that the plain error caused him prejudice by affecting the outcome of the lower court proceedings. Defendant bears the burden of establishing that the jury convicted an actually innocent person, or that the error affected the judicial proceedings' fairness, integrity, or public reputation independent of his innocence. *Carines*, 460 Mich at 763-764.

-3-

The record does not establish that the trial court proceedings resulted in the conviction of an actually innocent person. From the evidence presented at trial, reasonable jurors could find defendant guilty beyond a reasonable doubt of the charged offenses. The record reflects that the victim provided detailed testimony regarding the sexual abuse defendant perpetrated against her at least three times when she was about six years old. Individuals to whom the victim disclosed the sexual abuse testified that the victim described the sexual abuse in her own language without coaching or coercion.

In his defense, defendant presented evidence that challenged the veracity of the victim's allegations. Witnesses on defendant's behalf expressed doubt that the victim had been sexually abused by defendant. The victim's grandmother affirmed that the victim had been in the basement while defendant was there. She admitted that she saw defendant and the victim alone in the basement but denied that she ever saw any inappropriate activity. The victim's grandmother testified that she could not imagine defendant doing what the victim said happened. On cross-examination, the victim's grandmother testified that she could point to no reason why the victim would make up sexual abuse allegations. She affirmed that the victim had always been pretty truthful with her.

Defendant testified on his own behalf and offered the defense theory that he had not been present in the home when the alleged sexual abuse happened. He explained that he traveled out of town for his work and stayed out of state for weeks and could only return home for weekends every few weeks. He stated that the victim had not been at the house or stayed overnight when he was home. He recalled she visited on holiday weekends with other family members present. When asked if he had been in the basement alone with the victim he stated that he may have, but he explained that anyone could enter the basement at any time. He denied ever inappropriately touching the victim, taking his pants off in her presence, or having the victim take her pants off. He denied touching his penis on her vagina. In so testifying, he challenged the veracity of the victim.

On cross-examination, however, he contradicted his testimony by admitting that he had been in the home during a 17-month period and had not been absent because of working out of state. He testified that he could not recall specifically being alone with the victim in the basement. The prosecution pointed out that on direct examination he testified that he had been alone in the basement with her. Defendant responded that he based his earlier testimony on his assumption that it might have happened but stated that he did not keep track of when he and she were alone in the basement. Defendant admitted that the victim was generally truthful and admitted that he knew of nothing that established that she had any reason to lie.

The record reflects that defendant attempted to exonerate himself by suggesting that the victim lied about the sexual abuse. Nevertheless, after attempting to discredit the victim and calling into question the veracity of her allegations, defendant and the victim's grandmother admitted that the victim generally had been a truthful child and that they knew of no reason for her to lie. In so doing, defendant and the victim's grandmother undermined defendant's attack on the victim's credibility. Reasonable jurors could weigh the witnesses' testimonies and determine for themselves whether the victim testified credibly and truthfully about being sexually abused by defendant.

The record does not support the contention that Amstutz's improper testimony caused the jury to convict an innocent defendant. Nor does the record establish that her testimony affected the fairness, integrity, or public reputation of the proceedings. Accordingly, defendant has failed to meet his burden. We are not persuaded, based upon the record in this case, that we should exercise our discretion and reverse defendant's convictions because of the plain, forfeited error.

## B. PROSECUTION'S ELICITING EVIDENCE OF AND ARGUMENT REGARDING THE VICTIM'S TRUTHFULNESS

Defendant next argues that the prosecution committed prosecutorial misconduct by vouching for the veracity of the victim's allegations by eliciting testimony about the victim's character for truthfulness and during closing argument. To preserve for appeal an issue of prosecutorial misconduct the defendant must contemporaneously object and request a curative instruction, or move for a mistrial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). In this case, defendant did not contemporaneously object to the prosecution's eliciting of testimony from witnesses regarding whether they knew of any reason that the victim would lie about sexual abuse or whether the victim had been truthful with them personally. Defendant did not raise any objection during the prosecution's closing argument and did not move for a mistrial. Defendant also did not object on the ground he raises on appeal, that the trial court erred in violation of MRE 608(a) by allowing testimony regarding the victim's character for truthfulness. Defendant never requested a curative instruction, nor did he move for a mistrial. Therefore, defendant did not preserve this issue for appeal.

Unpreserved instances of prosecutorial misconduct are reviewed for plain error. *Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). To demonstrate plain error warranting appellate relief, a defendant must show that: (1) error occurred; (2) the error was plain; and (3) the plain error affected substantial rights. *Carines*, 460 Mich at 763. Defendant bears the burden to establish that the error caused him prejudice by affecting the outcome of the lower court proceedings. *Id*. Even if defendant establishes the three requirements, we must exercise discretion in deciding whether reversal is warranted. *Id*. Reversal is not warranted unless the plain error resulted in a conviction of an "actually innocent defendant" or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 763-764. Error requiring reversal cannot be found where a curative instruction would have "alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Curative instructions suffice to cure the prejudicial effect of most inappropriate prosecutorial conduct. *Unger*, 278 Mich App at 235. Jurors are presumed to follow their instructions. *Id*.

In general, prosecutors have "great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW 2d 659 (1995) (quotation marks and citation omitted). Further, the prosecution's "good-faith effort to admit evidence does not constitute misconduct." *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). A prosecutor's statement must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). A prosecutor may not vouch for the credibility of a witness to the effect that he has some special knowledge that the witness is testifying truthfully. *Bahoda*, 448 Mich at 276. A prosecutor also may not comment on his or her personal knowledge or belief regarding the truthfulness of a witness. *People v Bennett*, 290 Mich

-5-

App 465, 478; 802 NW2d 627 (2010). A prosecutor, however, is permitted to comment on his or her own witnesses' credibility during closing argument "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Further, a "prosecutor is free to argue from the evidence and its reasonable inferences in support of a witness's credibility." *Bennett*, 290 Mich App at 478. "A prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief . . . and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsbury*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (citations omitted). Prosecutors are given considerable latitude regarding their arguments. *Unger*, 278 Mich App at 236.

Michigan law establishes that "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014), quoting *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). However, MRE 608(a) provides an exception. A party may present reputation or opinion evidence supporting a witness's character for truthfulness "only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." *People v Lukity*, 460 Mich 484, 489; 596 NW2d 607 (1999). "[C]haracter for truthfulness is a specific aspect of credibility." *Id*. at 490. MRE 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

In *Lukity*, our Supreme Court differentiated between attacking a witness's credibility and attacking a witness's character for truthfulness. The Court clarified that credibility attacks challenge a witness's ability to recount and describe the charged incident and thereby indicate that the testimony is not worthy of belief. *Lukity*, 460 Mich at 490. Character for truthfulness attacks, by contrast, involve direct claims or accusations of lying but also suggestions that the witness has lied. Such attacks trigger MRE 608(a)(2). *Id*. at 491. Thus, when a victim's character for truthfulness has been attacked, the prosecution may elicit testimony of the victim's character for truthfulness under MRE 608(a).

In this case, defendant challenged the victim's credibility by eliciting testimony from her that suggested the sexual abuse did not happen and could not have happened as she described. Defense counsel's cross-examination of the prosecution's witnesses sought to discredit the victim and also suggest that she lied. Further, the testimony that the defense elicited from defense witnesses attacked the victim's character for truthfulness by suggesting that the sexual abuse never happened because of defendant's absences from the home, the victim's infrequent visits, the presence of other persons in the house, and that the allegations were unbelievable. Defense counsel's questioning of the witnesses throughout the trial made clear defendant's theory of the case that defendant lacked an opportunity to sexually abuse the victim, he never did so, and that the victim fabricated the allegations against defendant. Accordingly, the testimonies defendant elicited from witnesses triggered MRE 608(a) and permitted the prosecution on cross-examination to inquire regarding the witnesses' opinion of the victim's character for truthfulness. The

prosecution asked defendant and the victim's grandmother on cross-examination whether she had been truthful with them personally. They admitted that she had. Because defendant and the victim's grandmother's testimonies suggested that the victim lied, the prosecution also asked if they knew of any reasons why the victim would lie about what happened. They admitted that they knew of none. The two questions served to impeach the witnesses' testimonies that suggested the victim fabricated her allegations. The prosecution properly inquired regarding the witnesses' opinion of the victim's character for truthfulness. Defendant has failed to establish plain error in this regard.

Defendant argues that the prosecution also improperly elicited character for truthfulness testimony from the victim's mother who testified on the first day of trial and before the victim had testified. During her testimony about what she did after the victim disclosed the abuse to her, she testified that she wondered if her mother could continue babysitting the victim. The prosecution asked:

> *Q*. At that point, why would you have her go back to see your mom?
>
> *A*. I don't know. I don't know really what I was thinking. I don't—I mean, honestly, at that point, where I was with processing things, I don't know if I believed it yet. Like I knew—I knew something—I don't know. I was (undistinguishable). I don't know.
>
> *Q*. Do you doubt your daughter today?
>
> *A*. No, I don't doubt her at all.

At that time, defense counsel had not yet challenged the victim's character for truthfulness. Consequently, the prosecution improperly elicited character for truthfulness testimony from the victim's mother. Accordingly, plain error occurred. Because defendant has established plain error, we must determine whether the jury convicted an actually innocent person, or whether that plain error affected the judicial proceedings' fairness, integrity, or public reputation independent of his innocence. *Carines*, 460 Mich at 763-764. As previously explained, the jury could conclude beyond a reasonable doubt that the evidence established that defendant committed the charged offenses. Defendant has not established that the jury convicted an innocent defendant. The record also does not establish that the plain error affected the judicial proceedings' fairness, integrity, or public reputation independent of his innocence. Therefore, defendant has failed to meet his burden.

Defendant also asserts that the prosecution committed prosecutorial misconduct by making statements in closing argument regarding defendant's guilt and the victim's character for truthfulness. We disagree. The record reflects that the prosecution's closing arguments were well within the permissible bounds. The prosecution did not state that it had special knowledge that the victim testified truthfully. *Bahoda*, 448 Mich at 276. The prosecution appropriately commented on the prosecution's witnesses' credibility considering the conflicting evidence presented by the defense. The jury had to decide which witnesses to believe and the prosecution urged them to believe the victim based upon the evidence. *Thomas*, 260 Mich App at 455. The prosecution properly argued from the evidence that the jury could reasonably infer that the victim

testified credibly and that defendant lacked credibility. *Launsburry*, 217 Mich App 361. In light of defense counsel's arguments in closing, that defendant never had the opportunity to sexually abuse the victim and essentially that the victim fabricated the whole thing, the prosecution did not commit misconduct by arguing from the evidence presented to the jury that it should find defendant guilty as charged because the evidence established all of the elements beyond a reasonable doubt. The record also indicates that the trial court properly instructed the jury that it alone had the responsibility to decide whether it believed the witnesses' testimonies. See *Unger*, 278 Mich App at 235. Defendant, therefore, has failed to establish the existence of plain error in this regard.

## C. EFFECTIVENESS OF COUNSEL

Defendant argued alternatively that he is entitled to a new trial because defense counsel provided him ineffective assistance by failing to object to Amstutz's testimony, by failing to object to witnesses' testimonies regarding the victim's character for truthfulness, and by not objecting to the prosecution's statements during closing argument. In relation to these claims of error, we remanded this case to the trial court to conduct an evidentiary hearing to determine whether defendant's trial counsel provided him ineffective assistance and we retained jurisdiction. See *People v Miller*, unpublished order of the Court of Appeals entered June 23, 2020 (Docket No. 346744).

On remand, defendant moved for a new trial on the ground that his trial counsel provided him ineffective assistance by failing to object to instances of improper vouching for the victim's credibility by Amstutz and other witnesses. The judge who presided over defendant's trial, a 24-year circuit judge, conducted an evidentiary hearing on August 17, 2020, at which defendant's trial counsel testified. The trial court issued its opinion and order on September 3, 2020, denying defendant's motion for a new trial. The trial court concluded that defendant failed to satisfy his burden of establishing that his trial counsel provided him ineffective assistance.

Defendant now argues that the trial court erred by denying his motion for a new trial based upon his trial counsel's ineffective assistance. We disagree.

"A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008) (citation omitted).

To obtain a new trial on the ground that his counsel provided him ineffective assistance, defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citing *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011) and *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994) which adopted the federal constitutional standard set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed2d 674 (1984)).[2] In sum, defendant must prove that a fundamentally unfair or unreliable result occurred. *People v*

---

[2] On remand, the trial court applied the two-prong *Strickland* test.

*Lockett*, 295 Mich App 165, 182; 814 NW2d 295 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52 (citation omitted). This Court does not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243 (citation omitted). Defense counsel's failure to advance a meritless argument or raise a futile objection, however, does not constitute ineffective assistance. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, Amstutz improperly testified regarding the rarity of lying by children who make allegations of child sexual abuse. Defense counsel did not object. The failure to object, however, does not automatically constitute deficient performance if counsel, in the exercise of sound trial strategy, reasonably decided that not objecting served the advancement of defendant's defense. At the evidentiary hearing, defendant's trial attorney, Jeffrey Kortes, testified that he had practiced law for 17 years during which his caseload consisted of 95% criminal defense cases of which he tried approximately eight to twelve criminal sexual assault cases, and three or four of those involved children. Kortes testified that he represented defendant and presented the defense theory that defendant had been falsely accused based upon Kortes' investigation and the information defendant presented while maintaining his innocence throughout all his meetings with Kortes.

Kortes testified that, going into defendant's trial, he anticipated the admission of Amstutz's forensic interview of the victim. Kortes retained an expert on defendant's behalf to completely analyze Amstutz's interview and developed his cross-examination based upon that analysis. Kortes testified that he filed a successful motion to limit Amstutz's testimony to general topics and to preclude her from testifying about her forensic interview of the victim. Kortes recalled that Amstutz testified regarding whether children lie about being abused and that she stated that it happened rarely and that they often recant. He explained that he found the questions and testimony objectionable but he specifically observed the jury at the time and the jurors seemed quite disengaged, even bored. Kortes testified that he did not object because he did not want to "wake them up and direct their attention to anything it appeared they were not focused on." Further, Kortes reasoned that Amstutz spoke in generalities and did not testify regarding exact percentages so he declined making "a big thing" of the testimony.

Kortes also testified regarding witnesses' testimonies during trial about the victim's character for truthfulness. Kortes stated that he did not find such testimony objectionable because the defense theory had been that the allegations of sexual abuse lacked support because the evidence showed that such actions could not have happened and that the victim had been mistaken and could not be telling the truth. Kortes felt that the evidence supported the defense theory and objections would not have advanced the defense theory that the victim had not told the truth and that the misconduct could not have happened. Kortes explained that he did not directly state in court that the victim was lying, but the defense essentially alluded to that position.

On cross-examination, Kortes testified that the jury seemed to lack attention during the witnesses' testimonies regarding the victim's character for truthfulness and by not objecting he did not draw attention to such testimony. Kortes stated that he chose not to "make a big deal of it" to prevent the jury from paying more attention to the testimony. Kortes also testified that he did not

object to the prosecution's closing argument statements respecting Amstutz's testimony to avoid giving emphasis to it in front of the jury.

The record reflects that Amstutz's testimony supported defendant's theory of the case, that children who allege that they have been sexually assaulted do lie. Her further testimony that they rarely do so, however, improperly vouched for the victim and could have elicited an objection. Respecting witnesses' testimonies regarding the victim's character for truthfulness, such testimony similarly vouched for the victim and defense counsel could have objected to it. Nevertheless, the issue is whether, by failing to object to these testimonies, his performance fell below an objective standard of reasonableness.

The evidentiary hearing clarified that a reviewing court must consider not only the facts apparent on the surface of the record, but must also inquire into the reasoning of defense counsel to enable concluding whether defense counsel's conduct lacked reasonableness. Although the challenged testimonies on their face ordinarily may elicit objections, defense counsel must make on-the-spot decisions regarding when to object and calculate the effect of making such objections. The record in this case reflects that defendant's trial counsel had to evaluate whether and to what extent objections to the testimonies of the witnesses would advance the defense strategy or backfire by drawing attention to the testimony and impressing the jury of its significance. We are cognizant that in almost every trial defense counsel must make such risk assessments. In this case, the trial court had opportunity to preside over the entire trial and the evidentiary hearing. The record indicates that the trial court reflected upon the trial proceedings and heard Kortes testimony during the evidentiary hearing which enabled it to analyze his rationale for not objecting despite recognizing that the testimonies provided opportunities for raising objections. The trial court found Kortes' strategic decision to not interpose an objection was reasonable because it arose from defendant's trial theory and was calculated to advance the defense and not undermine it. The trial court had the opportunity to weigh Kortes' credibility and found his testimony credible and his rationale justified based upon the record. The trial court properly understood that it could not "substitute [its] judgment for that of counsel on matters of trial strategy" nor "use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243 (citation omitted). This Court is similarly not permitted to do so. *Id*.

Defendant presented no evidence at the evidentiary hearing to cast doubt upon Kortes' testimony or establish that Kortes acted without regard for defendant's trial strategy and simply provided deficient performance. Defendant's arguments that the trial court erred are unpersuasive. Moreover, even if we were to conclude that Kortes' performance fell below an objective standard of reasonableness, defendant has not established that, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Trakhtenberg*, 493 Mich at 51. Evidence established all of the elements of the charged offenses and the jury reasonably decided that the evidence established beyond a reasonable doubt defendant's guilt.

Further, defense counsel did not provide ineffective assistance by not objecting to the prosecution's questions that elicited testimony from the victim's grandmother and defendant regarding the victim's character for truthfulness. As explained previously, defendant challenged the victim's character for truthfulness throughout its cross-examination of the victim, other prosecution witnesses, and again during direct examination of defense witnesses. That triggered the prosecution's right to elicit character for truthfulness testimony as permitted under MRE

608(a). Defense counsel had no obligation to make futile and meritless objections. *Ericksen*, 288 Mich App at 201. Accordingly, defense counsel's performance in this regard did not fall below an objective standard of reasonableness, and therefore, he did not provide defendant ineffective assistance in this regard.

Further, because the record does not support defendant's claim that the prosecution committed prosecutorial misconduct during its closing argument, defendant cannot establish that his counsel's performance in this regard fell below an objective standard of reasonableness. Defense counsel was under no obligation to object to actions by the prosecution where such actions did not amount to prosecutorial misconduct. *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005). An objection by defense counsel would not have been meritorious, and defense counsel was not ineffective for failing to make a futile objection. *Ericksen*, 288 Mich App at 201.

As the trial court correctly concluded, following the hearing on remand after having presided over the trial in the instant case, defense counsel did not provide defendant ineffective assistance of counsel in this case and even if he had as alleged, it would not have affected the outcome of the trial in this regard.

## D. SENTENCING

Defendant next argues that the trial court erred by incorrectly assessing 15 points for Offense Variable (OV) 8 and incorrectly assessed 15 points for OV 10. We agree that the trial court incorrectly assessed points for OV 8 but disagree that the trial court erred regarding its assessment of 15 points for OV 10.

### 1. OV 8: ASPORTATION

We review for clear error the trial court's factual determinations for sentencing which must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which" we review de novo. *Id.*

Under MCL 777.38(1)(a), a trial court may assess the defendant 15 points for OV 8 if the defendant asported the victim to another place of greater danger or to a situation of greater danger, or held the victim captive beyond the time necessary to commit the charged offense. Asportation occurs "[i]f a victim is carried away or removed to another place of greater danger or to a situation of greater danger." *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017) (quotation marks omitted). "[M]ovement of a victim that is incidental to the commission of a crime nonetheless qualifies as asportation." *Id.* at 17.

In this case, the trial court assessed defendant 15 points for OV 8. No evidence in the record, however, established that defendant moved the victim or caused her to go down to the basement before defendant committed the CSC-II offenses of which the jury found him guilty. There is no evidence that, before defendant sexually assaulted the victim, he took or invited the victim into the basement where the sexual abuse occurred. Therefore, the trial court clearly erred by assessing defendant 15 points for OV 8. See *Hardy*, 494 Mich at 438.

## 2. OV 10: EXPLOITATION OF A VULNERABLE VICTIM

Under MCL 777.40, a trial court may assess points for OV 10 if a preponderance of the evidence establishes that the defendant exploited a vulnerable victim.  MCL 777.40(1) requires assessment of points depending upon the defendant's conduct:

> (a) Predatory conduct was involved ............................................. 15 points

> (b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status ....................................................................................... 10 points

> (c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious ...................................................................... 5 points

> (d) The offender did not exploit a victim's vulnerability ............... 0 points

Trial courts assign 15 points for OV 10 if "[p]redatory conduct was involved in exploiting a vulnerable victim."  *People v Johnson*, 298 Mich App 128, 133; 826 NW2d 170 (2012) (quotation marks and citations omitted; alteration in original).  "Under MCL 777.40(3)(a), 'predatory conduct' is conduct that occurred before the commission of the scoring offense and that was directed at the victim for the primary purpose of victimization."  *Id*.  MCL 777.40(3)(c) defines vulnerability as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation."  A young child "may be susceptible to physical restraint or temptation by an adult."  *Id*.  To determine whether the trial court properly assigned 15 points for OV 10, we must answer the following questions in the affirmative:

> (1)  Did the offender engage in conduct before the commission of the offense?

> (2)  Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3)  Was the victimization the offender's primary purpose for engaging in the preoffense conduct?  [*People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008).]

In this case, the trial court assessed defendant 15 points for OV 10.  In *People v Steele*, 283 Mich App 472, 491; 769 NW2d 256 (2009), this Court affirmatively answered the first question because the victim had been sexually assaulted numerous times before disclosing the abuse.  The record in this case similarly establishes that, before the victim disclosed the abuse to her mother, defendant sexually abused her at least three times.  Accordingly, evidence requires answering the first question affirmatively.  The record also indicates that defendant directed his conduct at the victim because of her susceptibility to persuasion and temptation.  The victim's tender age and defendant's authority over her as her grandfather made her particularly susceptible.  *Id*. at 492.  Evidence established that the victim had a close bond with defendant and enjoyed being with him.

The victim testified that she played the "grandpa game," which she also called the "privacy game," with defendant in the basement where defendant and the victim's grandmother kept toys for the children. The victim also testified that defendant told her not to tell anyone. From such evidence, the second question must be answered affirmatively. Evidence established defendant's repetitive intentional predatory conduct directed at the victim for the purpose of victimizing her. The record does not indicate random opportunistic conduct. Defendant created a game of sexual abuse that he played with the victim. The evidence , therefore, establishes that the third question must be answered affirmatively. Accordingly, a preponderance of the evidence supported the trial court's assessment of 15 points for OV 10.

### 3.  SENTENCING GUIDELINES CALCULATION AND UPWARD DEPARTURE SENTENCE

The trial court assessed defendant a total prior record variable (PRV) score of 20 points, which placed him in PRV Level C and assessed defendant a total OV score of 65 points, which placed him in OV Level V under MCL 777.64. CSC-II is a Class C offense. Under the guidelines sentencing grid for Class C offenses, defendant's PRV Level C and OV Level V determined a minimum sentence range of 36 to 71 months' imprisonment. Reduction of defendant's OV score by 15 points because of the trial court's OV 8 scoring error, however, does not change defendant's minimum sentence range because a total of 50 points continues to place defendant in OV Level V. Defendant, therefore, is not entitled to resentencing.

Defendant argues that defense counsel provided him ineffective assistance by not objecting to the trial court's scoring of OV 8 and OV 10. Although defense counsel was remiss in not objecting to the trial court's scoring of OV 8, his performance did not fall short respecting OV 10. Further, because the correction of the incorrectly scored OV 8 does not change defendant's minimum sentence calculated under the guidelines grid for Class C offenses, defense counsel did not provide ineffective assistance of counsel since the sentencing range remains the same. Any objection regarding OV 10 would have lacked merit and the failure to make a meritless objection does not constitute ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

Defendant also argues that the trial court erred by imposing a sentence that upwardly departed from the guidelines minimum sentence range of 71 months by sentencing him to 7 years' (84 months) imprisonment. We disagree.

We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review for clear error a trial court's reasons for a departure from the legislative sentencing guidelines. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). We review for an abuse of discretion the reasonableness of a trial court's departure sentence. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 459-460 (quotation marks omitted). A sentence that fulfills the principle of proportionality is

reasonable. *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015), rev'd not in relevant part 500 Mich 453 (2017).

In *People v Lockridge*, 498 Mich 358, 391; 498 Mich 358 (2015), our Supreme Court held that the sentencing guidelines are advisory only, but "remain a highly relevant consideration in a trial court's exercise of sentencing discretion," and the trial court must consider them when sentencing a defendant. We review for reasonableness a sentence that departs from the applicable guidelines and a defendant must only be resentenced if the trial court imposed an unreasonable sentence. *Id*. at 392. Trial "courts must justify the sentence imposed in order to facilitate appellate review." *Id*. When calculating the sentencing guidelines range, a trial court may consider all record evidence including the contents of a presentencing investigation report (PSIR). *People v Johnson*, 298 Mich App at 131. A PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *Callon*, 256 Mich App at 334.

Further, "even in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 322 Mich App 233, 239; 911 NW2d 253 (2017), vacated in part on other grounds 504 Mich 969 (2019). "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Milbourn*, 435 Mich at 661.

In *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017), this Court provided additional guidance for determining whether a departure sentence satisfies the principle of proportionality:

> Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a "useful tool" or "guideposts" for effectively combating disparity in sentencing. Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. [Quotation marks and citations omitted.]

In this case, the record reflects that the trial court expressly acknowledged that although *Lockridge* made the sentencing guidelines advisory it had to justify its sentence to facilitate appellate review. The trial court understood that the guidelines recommended a minimum sentence between 36 months and 71 months and defendant's CSC-II convictions required a maximum sentence of 15 years' imprisonment.

Defendant's PSIR reported that while he served in the United States Army during 2008, he was issued an administrative reprimand for inappropriate contact with a child under the age of 12

and for allowing her to possess alcohol. The PSIR stated that Army documents reported that defendant repeatedly inappropriately touched the child while sitting next to her on his couch. Defendant appealed the finding and petitioned to remove the reprimand from his record. The Army denied his petition. The PSIR reported that during the investigation of the charged offenses, the police learned of defendant's Army record and contacted the victim. She confirmed that the incident occurred and explained that defendant put his hand down the front of her pants near her vagina and groped her. He also pushed himself up against her and pulled her toward him while he had an erection.[3] The trial court considered defendant's lack of criminal history but explained that:

> the clean record ignores what happened in the Army and I think that's a reason to move ahead of those guidelines. And I'm very troubled by this. Judges have to be careful about citing a Defendant's—quote: lack of remorse because that can be very subjective. And in this case, Mr. Miller had a trial and he wants to certainly preserve his position for appeal. I get it.

> But on Page 6 of the report, Mr. Miller spoke about the Army situation. He says he was involved in an incident that—that was quote: essentially a drunk and disorderly—end quote and was required to attend two weeks of outpatient alcohol classes. What happened there was far worse than a drunk and disorderly and it just suggests not just a lack of remorse but a lack of awareness, self-awareness about what's going on here.

At the sentencing hearing, defense counsel stated that he reviewed the Army report referred to in the PSIR and affirmed that "[e]ven though [defendant] disputes those allegations, this is accurate information that was submitted by the Army." Because defendant failed to effectively challenge the facts stated in his PSIR, the trial court could properly rely on the PSIR to determine defendant's sentence. *Callon*, 256 Mich App at 334. The trial court correctly observed that the guidelines did not account for the incident during his service in the Army. Therefore, the trial court could properly consider it in determining defendant's minimum sentence and such evidence could support the upward departure imposed. See *Steanhouse*, 322 Mich App at 240. The trial court appropriately considered the seriousness of the offenses the jury found defendant guilty of committing and also correctly considered the offender to determine defendant's sentence.

The trial court sentenced defendant to 7 to 15 years' imprisonment on each of his CSC-II convictions. Defendant's minimum sentence departed upward from the sentencing guidelines recommended minimum 71 months sentence by 13 months. The record reflects that the trial court appropriately recognized that the guidelines failed to consider defendant's prior conduct and found that the evidence warranted an upward departure because of the seriousness of the offenses committed against the six-year-old victim in this case and defendant's lack of awareness of the seriousness of the horrific crimes he committed against her. The trial court did not err by considering defendant's minimization of his conduct toward a child under 12 while he served in

---

[3] The record reflects that the prosecution intended to call as a trial witness the other victim, now 20 years old and serving in the Army, but the woman could not obtain permission from the Army to travel and attend the trial.

the Army. Therefore, under the circumstances of this case, the trial court did not clearly err by imposing a sentence that departed upward 13 months from the minimum sentence recommended under the guidelines.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien
/s/ James Robert Redford